## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ARITHA STANLEY-ADAMS ) | |
| ) | Cause No: |
| Plaintiff, ) | |
| ) | JURY TRIAL DEMANDED |
| v. ) | |
| ) | |
| ST. CLAIR COUNTY ) | |
| **Serve at:** ) | |
| **10 Public Square** ) | |
| **Belleville, IL 62220** ) | |

## <u>COMPLAINT</u>

NOW COMES Plaintiff Aritha Stanley-Adams ("Plaintiff"), by her attorneys, and for her complaint against Defendant St. Clair County ("Defendant"), states as follows:

## <u>INTRODUCTION</u>

1.      This matter arises under Title VII of the Civil Rights Act as amended, 42 U.S.C. ¶2000e et. seq., the Illinois Human Rights Act, 775 Ill. Comp. Stat. Ann. 5/1-101, et. seq., and the Fourteenth Amendment to the United States Constitution. Plaintiff is Black. Although she was one of Defendant's most experienced employees, Defendant paid Plaintiff less than similarly situated white employees. When Plaintiff opposed Defendant's illegal practices, Defendant retaliated against Plaintiff. Defendant repeatedly refused to promote Plaintiff. Instead, Defendant promoted less qualified white employees. When Plaintiff opposed Defendant's illegal practices, Defendant retaliated against Plaintiff. Specifically, among other things, Defendant forced Plaintiff to transfer into a customer facing job during the Global Covid-19 Pandemic while she was undergoing cancer treatment. This put Plaintiff at high risk from serious health complications and/or death. Defendant's actions forced Plaintiff to retire from her job.

1

## JURISDICTION AND VENUE

2.      Plaintiff invokes this Court's Jurisdiction under 28 U.S.C. §1331, 1343(a) and 42 U.S.C. §2000e-5 to hear and decide claims under federal law. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a) to hear and decide Plaintiff's claims under Illinois state law.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and 42 U.S.C. §2000e-5(f)(1)(B)(3) because all events giving rise to this action occurred within the Southern District of Illinois.

4.      On December 13, 2019, Plaintiff cross filed a charge of discrimination against St. Clair County with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") alleging discrimination due to race and retaliation. Plaintiff received the Notice of Dismissal from the IDHR on October 28, 2021. Plaintiff then received a Dismissal and Notice of Rights from the EEOC on November 30, 2021, Plaintiff files this action within 90 days of receipt of the final notice. Plaintiff has complied fully with the administrative exhaustion requirements of Title VII and the Illinois Human Rights Act.

## PARTIES

5.      Plaintiff Aritha Stanley-Adams is a resident of Illinois and resides in Swansea, Illinois which is located within the Southern District of Illinois. Plaintiff is Black.

6.      Defendant St. Clair County is a duly organized County Government entity under the Illinois Constitution and Illinois state law. Defendant has the capacity to sue and be sued and is located in Belleville, Illinois which is located within the Southern District of Illinois. Defendant can be served at its main administrative offices at 10 Public Square, Belleville, Illinois, 62220.

2

7.      All facts giving rise to this cause of action occurred in St. Clair County, Illinois which is located within the Southern District of Illinois.

## FACTS

### A.      General Facts Applicable to All Counts

8.      Plaintiff began her employment with Defendant on April 16, 2007, when St. Clair County Assessor's office hired her as a Customer Service Representative.

9.      Plaintiff always worked as a full-time employee for Defendant.

10.     Plaintiff is Black.

11.     About a month after she began working as a Customer Service Representative, the Defendant transferred Plaintiff to work in the Residential Assessor's Department as a Customer Service Representative.

12.     After about two months working in the St. Clair County Assessor's Office, Defendant transferred again – this time into to the Sales Department in the Residential Assessor's Department. There, Plaintiff began performing the job duties of a Sales Assessor Administrator. However, Defendant never changed Plaintiff's job title to reflect these new job duties. Defendant did not increase Plaintiff's pay commensurate with these new job duties. Plaintiff remained in this position for most of her employment with Defendant performing additional or different job duties than those required by her official job title.

13.     While Plaintiff was employed with Defendant, her job title and pay never changed although her job duties often did. Plaintiff's job title and pay never reflected her actual job duties while she was employed with Defendant.

14.     While performing the duties of a Sales Assessor Administrator, Plaintiff's job duties included receiving, reviewing, and drafting tax forms, and entering and reviewing all tax data to make sure it was correct before forwarding that information to the State of Illinois.

15.     Plaintiff always performed her job duties for Defendant in a satisfactory manner.

16.     Plaintiff never received a bad employment review and was never subject to discipline until after she complained about Defendant's discriminatory pay policies, retaliation, and failure to promote her.

17.     Plaintiff was well qualified for performing the job duties of a Sales Assessor Administrator. She received a BA from Southern Illinois University, Carbondale in Workforce Education and Development in August of 2006. She also possesses two Associated degrees in Business Administration. One from Southern Illinois University East, St. Louis, formerly Metropolitan Community College in 1978, and one from Southwestern Illinois College, formerly known as Belleville Area College in 2006.

18.     When Plaintiff began performing the job duties a Sales Assessor Administrator in 2007, the Sales Department was two years behind on filing deadlines. Plaintiff was instrumental in eliminating the backlog.

19.     Plaintiff was so skilled in performing the job duties of a Sales Assessor Administrator that her supervisors tasked her with training other Sales Assessor Administrators in the Department.

20.     Plaintiff received small, cost of living and merit-based raises while she was employed with Defendant.

21.     When Defendant forced her into retirement in February 2020, Plaintiff's pay was at a little over $15.00 an hour. During the period relevant to this cause of action, Plaintiff had

4

more seniority and work experience than Defendant's white employees that were paid more for the same work or promoted over Plaintiff to higher job titles and/or pay.

22.     During the period relevant to this cause of action, Plaintiff attended every training requested by her supervisors and learned how to use every software system utilized in the Assessor's Office.

23.     While an employee of Defendant, Plaintiff accepted every involuntary job transfer she was given by her supervisors and completed all job duties assigned by her supervisors whether they were in her job description or not. Despite the extra job duties, Defendant regularly assigned to her, Plaintiff never received a promotion or raise in pay commensurate with her additional work because she is Black. White employees regularly received promotions, higher salaries, and corresponding raises in pay after Defendant assigned them additional and/or different work.

24.     Defendant's Board of Commissioners ("Board") is constituted of duly elected Commissioners who at all times relevant to this cause of action served as employees and agents of Defendant and had supervisory authority over Plaintiff.

25.     Defendant's Board has a custom, policy, and practice of supporting and/or ignoring Defendant's supervisory employees paying Black employees less money than white employees.

26.     Defendant's Board also has a custom, policy, and practice of supporting and ignoring Defendant's failure to promote Black employees.

27.     When Defendant transferred Plaintiff into the Sales Department, it was the custom that two employees worked as Sales Assessor Administrators. Sharon Carney, a white female, was the second Sales Assessor Administrator when Plaintiff first transferred into the Sales

Department. Ms. Carney left about a year after Plaintiff's transfer, and Plaintiff then handled the workload of two employees. Plaintiff never received a promotion in job title or pay for this extra work.

28.     When Plaintiff began working for Defendant in 2007, Plaintiff's Black co-workers told her Defendant regularly and knowingly paid white workers more than Black workers for the same work and passed higher qualified Black employees over for promotion.

29.     Over time, Plaintiff observed for herself that Defendant passed over higher qualified Black employees for promotions and raises. She also noticed that Black employees routinely made less salary and received lower raises than white employees.

30.     Plaintiff's observations of the lower wages, lower raises, and denial of promotions to more qualified Black employees evidence a culture, policy, and practice of racial discrimination against Black employees by Defendant.

31.     In 2018, Willie Baxton, a Black co-worker, showed Plaintiff how to review the St. Clair County Pay Registers, which employees could access through their employee account. When Plaintiff reviewed Defendant's pay register, she confirmed Defendant's less qualified white employees regularly earned more than higher qualified Black employees. Plaintiff discovered Defendant was paying her less and giving her lower raises than similarly situated or less qualified white employees. Plaintiff discovered this pay discrimination occurred since Defendant hired her in 2007.

32.     Over the course of her employment, the following current and former Black employees of Defendant St. Clair County Assessor's Office complained directly to Plaintiff that Defendant paid them less than white employees for the same or similar work: Roeveina Moore,

6

Salmartis "Marty" Owens, Robert L. "Speed" Allen, Ge'Fanic Sanes, Diahann Luckett, Willie Baxton, Keith Bond, and Tamarcus Page.

33.     For example, Robert L. "Speed" Allen was a Black Field Assessor. He worked full time for Defendant. Defendant paid s white part-time Field Assessor, Phillip Boide, more than Mr. Allen, for same or similar work. In December 2018, Mr. Boide's paycheck totaled $1737.78 for doing part time work for Defendant, while Mr. Allen's paycheck totaled, $1051.21 for working full time. Mr. Boide also made more salary for the part time hours he worked in December 2018, than Salamartis "Marty" Owens, another Black full-time employee.

34.     For example, Ge'Fanic Sanes was a Black Residential Assessor. Defendant paid Michelle Johnston, a white Residential Assessor, more than Ms. Sanes, a Black employee, for the same or similar work. In December of 2018, Ms. Johnston's paychecks totaled $2259.68, while Ms. Sanes paychecks totaled $1794.92. Ms. Sanes had more experience and seniority than Ms. Johnston, but Defendant paid her less for the same work because she is Black.

35.     For example, Tamarcus Page was a Black Commercial Assessor. Defendant paid Anthony Martin, a white Commercial Assessor with less experience, more than Mr. Page, for the same or similar work. In December of 2018, Mr. Martin's paychecks totaled $2199.90 while Mr. Page's paychecks totaled $1874.10. Mr. Page had more experience and seniority than Mr. Martin, but Defendant paid him less for the same work because he is Black.

36.     Over the course of her employment, the following current and former Black employees in departments outside the Assessor's Office in Defendant St. Clair County complained directly to Plaintiff Defendant paid them less than white employees for the same or similar work: Zelphia Otis Robinson, Joanne Johnson, Felicia Peters, Shirley Perry Wicks, Rosa

Blackwell, and Dwayne Sargeant. This evidences that Defendant routinely underpaid all its Black employees evidencing a culture, policy, and custom of racial discrimination.

### B.    Plaintiff's Employment: 2007-2010

37.    Assessor Gordon Bush was Plaintiff's supervisor from 2007 to November 2010.

38.    In 2009, Mr. Bush restructured the Sales Department. Mr. Bush transferred Plaintiff to the Customer Service Department. After her transfer, her salary was going to be raised to little over $30,000 a year. Mr. Bush informed Plaintiff that this was similar pay to the other employees currently working in the Customer Service Department with the same job title as Plaintiff. This amounted to an approximately $2,000 rise in pay for Plaintiff.

39.    Office Manager Ann Barnum was Plaintiff's supervisor from 2007 to until Defendant forced Plaintiff into early retirement on February 5, 2020. Ms. Barnum is white.

40.    Plaintiff only worked in the Customer Service Department for two weeks after her transfer. Ms. Barnum then transferred Plaintiff back to the Sales Department where she did not receive the promised raise. Plaintiff's supervisor Ms. Willie Baxton did not want Plaintiff to be moved back to the Sales Department, but Ms. Barnum moved her anyway. Ms. Barnum additionally refused to put through the pay raise given to Plaintiff by Mr. Bush, which would have made her pay commensurate to the other white employees that had the job title of Customer Service Representative.

41.    After Ms. Barnum unilaterally moved Plaintiff back to the Sales Department, Defendant transferred Lisa Gray, a white employee, to the Sales Department to assist Plaintiff in doing the job duties of a Sales Assessor Administrator. Plaintiff and Ms. Gray shared the exact same job duties. Plaintiff had worked for the Assessor's Office for longer than Ms. Gray when Defendant transferred Ms. Gray. In 2018, Plaintiff discovered Defendant had given Ms. Gray

higher raises after that transfer, so that Ms. Gray was being paid more than Plaintiff for the same or similar work, although she had less experience and seniority.

42.    For example, Plaintiff noted, in December of 2014, Plaintiff received paychecks totaling $1,393.58. Ms. Gray was paid $1504.76 that same month. In December of 2016, Plaintiff received paychecks totaling $1451.78 that month. Ms. Gray was paid $1679.92 for the same period. In December of 2017, Plaintiff received paychecks totaling $1465.38. Ms. Gray was paid $1719.18 for the same period. In both December and June of 2018, Plaintiff received paychecks totaling $1502.98. Ms. Gray was paid $1577.66 for the same period.

## C.    Plaintiff's Employment: 2010-2018

43.    Assessor Jennifer Gomric-Minton was also Plaintiff's supervisor from November 2010 until Defendant forced Plaintiff into early retirement on February 5, 2020. Ms. Gomric-Minton is white.

44.    In 2014, a white employee with a substantial salary, Deborah Jones, retired. Ms. Jones job title was Division and Consolidation Assessor.

45.    Although Plaintiff was the most senior and experienced employee in the Sales Department, Defendant never offered her the job position of Division and Consolidation Assessor.

46.    Instead, Ms. Gomric-Minton hired a white woman Angie York to fill the vacant position left after Ms. Jones retirement. Ms. York had less education and job experience than Plaintiff but received Ms. Jones old job title of Division and Consolidation Assessor. However, Ms. York was unable to do the job duties of the Division and Consolidation Assessor, so Defendant gave those job duties to other employees. Ms. York kept the job title of Division and Consolidation Assessor, and the pay that went with it, even though she was not doing the job

duties required of the position. Instead, she was performing the same job duties as Plaintiff, but Defendant awarded her a higher job title and more pay for doing the exact same work as Plaintiff.

47.     After Defendant hired Ms. York and Defendant assigned her the same job duties as Plaintiff, Plaintiff approached her supervisor Ms. Gomric-Minton and asked if she and Ms. York could split the difference of Ms. Jones substantial salary after her retirement so that both Plaintiff and Ms. York could receive a raise. Ms. Gomric-Minton said no.

48.     After Defendant hired Ms. York, Ms. Gomric-Minton tasked Plaintiff with training Ms. York as a Sales Assessor Administrator.

49.     When Plaintiff reviewed the pay registers in 2018, she discovered that Ms. York Defendant hired her in 2014 at a higher salary and job position than Plaintiff and she continued to receive higher raises than Plaintiff while she was employed for the same or similar work.

50.     For example, in December of 2013 Plaintiff received a paycheck for $729.08. Ms. York's paycheck for the same pay period totaled $943.42. In December of 2014, Plaintiff received paychecks totaling $1393.58. Ms. York's pay for the same period totaled $1889.41. In December of 2015, Plaintiff's received paychecks totaling $1468.07. Ms. York's pay for the same period totaled $1675.02. In December of 2016, Plaintiff's paychecks totaled $1451.78. Ms. York received $1676.73 in pay for the same period. In December of 2017, Plaintiff's paychecks totaled $1465.38. Ms. York's pay that month totaled $1687.21. Finally, in both June and December of 2018, Plaintiff's monthly paychecks totaled $1502.97. Ms. York's totaled $1696.10. Defendant gave Ms. York a higher job title and paid her more than Plaintiff despite Ms. York having less, experience, qualifications, and seniority than Plaintiff, all while performing the exact same work as Plaintiff.

51.     In December of 2014, Plaintiff did not receive pay for one of the two days of paid leave Defendants gave employees at Christmas. Plaintiff had to complain to Office Manager Ms. Barnum to receive the second day of paid leave to which she was she was entitled. This did not happen to any of the Defendant's other employees. Plaintiff felt this was done in retaliation for her asking for a raise after Ms. Jones retirement.

52.     In February of 2015, Plaintiff became extremely ill at work and needed to use the restroom quickly. When she returned from the restroom, Ms. Barnum accused her in front of her co-workers of avoiding work by being in the bathroom for too long. Plaintiff told Ms. Barnum she was sick, but Ms. Barnum did not care. Plaintiff had never seen Ms. Barnum discipline other employees for using the restroom at work and felt that Ms. Barnum's actions were done in retaliation for Plaintiff requesting a raise after Ms. Jones retirement.

53.     After these incidents, on March 3, 2015, Plaintiff wrote a letter to Ms. Gomric-Minton and Ms. Barnum to formally complain about Plaintiff's observations that Defendant passed over Plaintiff and other Black employees for raises and promotions in favor of white employees. Plaintiff also complained she was underpaid compared to white employees who did the same or similar work. Plaintiff also complained about the retaliation she had recently suffered at the hands of Ms. Barnum regarding her holiday pay and bathroom use.

54.     Ms. Gomric-Minton called a meeting shortly after Plaintiff submitted her letter. Ms. Gomric-Minton, and Ms. Barnum dismissed all of Plaintiff's complaints and denied any racial disparity in the office. In 2018, Plaintiff found out these denials were untrue when she gained access to St. Clair County's pay registers.

55.     Ms. Gomric-Minton and Ms. Barnum did not pass Plaintiff's complaints of discrimination up the chain of command. They also did not investigate Plaintiff's complaints of racial discrimination.

56.     On April 8, 2015, Ms. Gomric-Minton wrote a letter in response to Plaintiff's written complaint. Ms. Gomric-Minton claimed that Plaintiff had received all raises that were recommended for her by the St. Clair County Board of Trustees and that all employment decisions and promotions were based upon "the best interests of the operation of the office."

57.     Again in 2015 or 2016, Plaintiff's supervisor Ms. Barnum shorted Plaintiff a day of regular pay. Plaintiff again had to approach Ms. Barnum and request her proper pay. Plaintiff felt that Ms. Barnum's actions were done in retaliation for Plaintiff's written complaint.

**D.     Plaintiff's Employment: 2019 - 2020**

58.     Deputy Chief Assessor Patricia Boze was also Plaintiff's supervisor from 2015 until Plaintiff was forced into early retirement in February 2020. Ms. Boze is white.

59.     In March of 2019, Ms. Gomric-Minton and Ms. Boze decided that Ms. York, the less qualified and experienced, white employee hired in 2014, would assume all the work in the Sales Department. They also transferred Plaintiff to the public facing role of Customer Service over her objection.

60.     Although Plaintiff had more qualifications and experience than Ms. York, Defendant never offered her the promotion because she is Black.

61.     When Defendant offered Ms. York the promotion, she was less qualified than Plaintiff but received the promotion because she is white.

62.     Plaintiff did not receive a pay increase when Defendant forcibly transferred her to the Customer Service Position. Plaintiff checked the Defendant's pay registers and discovered

that in the past all other white employees received pay increases after Defendant transferred them to Customer Service in the Sales Assessor's Department.

63.     On March 5, 2019, Plaintiff made a second formal written complaint to Ms. Gomric-Minton, Human Resources Manager Mr. Frank Bergman, and the Chairman of the Board for St. Clair County Mr. Mark Kern, informing them they paid her less than Defendant's white employees and denied her a promotion because she is Black.

64.     Plaintiff never received a response to her letter.

65.     Mr. Bergman, Ms. Gomric-Minton, and Ms. Barnum did not pass Plaintiff's complaints of discrimination up the chain of command or order an investigation. Mr. Kern never brought Plaintiff's complaints formally before the Board for investigation or consideration.

66.     Throughout her employment Plaintiff's supervisors never contacted Plaintiff with questions and concerns about the Sales Department even though Plaintiff was the most senior and most knowledgeable employee in the Department. Instead, Plaintiff's supervisors always went to Ms. Jones and then Ms. York to ask their questions. Ms. Jones and Ms. York, in turn, had to ask Plaintiff how to answer those questions due to their lack of knowledge and experience. This treatment was humiliating for the Plaintiff and was done because she was Black and/or in retaliation for Plaintiff's complaints regarding disparate pay and failure to promote due to racial discrimination.

### E.      Plaintiff's Constructive Discharge: February 5, 2020

67.     Plaintiff was diagnosed with cancer in January 2019.

68.     Plaintiff had her first surgery required by her cancer diagnosis in January of 2019. In March of 2019, when Plaintiff returned to work, she was immediately transferred into a public facing job in Customer Service.

69.     By March 2019, Defendant knew Plaintiff was receiving cancer treatment. Defendant transferred Plaintiff to work in a public facing job in Customer Service, despite knowing she was at high risk of complications and/or death from Covid-19 due to receiving treatment for cancer.

70.     Plaintiff continued her work as a Customer Service Representative in the Sales Office until February 5, 2020, when she was forced into early retirement to avoid contracting Covid-19.

71.     For the entirety of her employment, Defendant paid Plaintiff a lower salary, gave her lower raises, and denied her promotions because she is Black.

72.     By contrast, Defendant paid Plaintiff's less qualified, white co-workers' higher salaries and raises, and promoted them because they are white.

73.     Plaintiff's supervisors made it impossible for Plaintiff to do her job and impossible to do her job without great risk to her health and safety. As a result, Defendant forced Plaintiff to retire from her employment with Defendant on February 5, 2020, which constituted a constructive discharge.

74.     Defendant's ongoing racial discrimination, disparate pay, failure to promote, and retaliation damaged Plaintiff financially and caused Plaintiff mental anguish, humiliation, stress, and emotional distress.

## VIOLATIONS OF LAW

### Count I
### 42 U.S.C. §1983: Equal Protection

75.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

14

76.     As described in more detail above, Defendant St. Clair denied Plaintiff equal protection of the law in violation of her rights under the Fourteenth Amendment of the Constitution of the United States by subjecting her to discrimination due to her race.

77.     The misconduct described in this Count was motivated by racial animus and constituted purposeful discrimination.

78.     This misconduct described in this Count was undertaken by Defendant's employee's Jennifer Gomric-Minton, Ann Barnum, Patricia Boze, and Frank Bergman and its agents on the Board within the scope of their employment or agency and under color of law such that their employer Defendant is liable for their actions.

79.     As described above, Defendant's employee's Jennifer Gomric-Minton, Ann Barnum, Patricia Boze, and Frank Bergman and its agents on the Board within the scope of their employment or agency paid Plaintiff less money than similarly situated, less qualified white employees for the same or similar work throughout her employment because Plaintiff was Black.

80.     Defendant engaged in this behavior from 2007 until 2020 evidencing an ongoing and longstanding culture, policy, practice, or custom of discrimination against Plaintiff due to her race.

81.     The misconduct described in this Count was undertaken pursuant to the discriminatory culture, policies, customs, and practices of Defendant in the manner described more fully above.

## Count II
## Title VII – Race Discrimination

82.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

15

83.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

84.     Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

85.     Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

86.     Defendant's employee's Jennifer Gomric-Minton, Ann Barnum, Patricia Boze, and Frank Bergman were Plaintiff's supervisors and employees and agents of Defendant.

87.     Defendant's Board was comprised of officers and agents of Defendant and had supervisory power over Plaintiff.

88.     As described above, Defendant through its officers, employees and agents engaged in intentional racial discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

89.     As described above, employee's agents and officers of Defendant, paid Plaintiff less wages and gave her lower raises than similarly situated less qualified white employees for the same or similar work throughout her employment and repeatedly failed to promote Plaintiff despite her higher qualifications and increased workload, evidencing an ongoing and longstanding culture, policy, practice, or custom of discrimination against Plaintiff due to her race.

90.     As described above, employees and agents were aware that Plaintiff was being underpaid due to racial discrimination but failed to take reasonable corrective measures to remedy the ongoing underpayment of Plaintiff for same or similar work done by other less qualified white employees of Defendant and regularly failed to promote Plaintiff despite her higher qualifications and increased workload, evidencing an ongoing culture, policy, practice or custom of discrimination against Plaintiff due to her race.

16

91.     Defendant's actions were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

**Count III**
**Title VII – Retaliation**

92.     Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

93.     Plaintiff is an employee as defined by 42 U.S.C. § 2000e(f)

94.     Defendant is an employer as defined by 42 U.S.C. § 2000e(b).

95.     Defendant's employees Jennifer Gomric-Minton, Ann Barnum, Patricia Boze and Frank Bergman were Plaintiff's supervisors and employees and agents of Defendant.

96.     Defendant's Board were officers and agents of Defendants and had supervisory power over Plaintiff.

97.     As described above, Defendant engaged in intentional racial discrimination in the terms and conditions of Plaintiff's employment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

98.     As described above, Defendant St. Clair took adverse employment actions against Plaintiff and retaliated against Plaintiff by subjecting her to public harassment when using the restroom while ill, not properly paying her on several occasions, interfering with Plaintiff's ability to do her job by refusing to work with her, failing to promote Plaintiff to a job she was qualified for, instead promoting a less qualified white employee, and placing Plaintiff purposefully in job in which she would have to deal with the public putting at high risk of severe illness and death due to Covid 19, eventually causing Plaintiff to retire early, which constituted a constructive discharge.

99.     Defendant retaliated against Plaintiff for:

a.  her opposition to the ongoing discriminatory culture, policies, customs, and procedures in place at Defendant as practiced and implemented by Defendant's employees, agents, and Board; and/or

b.  Her complaints to her supervisors on March 3, 2018, and March 5, 2019, that she was receiving a lower salary and lower raises than less qualified white employees for the same or similar work, and repeatedly failing to promote Plaintiff despite her higher qualifications and increased workload.

100.  Defendant's actions were in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1).

## Count IV
## Illinois Human Rights Act - Discrimination Due to Race

101.  Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth therein.

102.  Plaintiff is an employee, within the meaning of the IHRA, 775 ILCS 5/2-101(A)(1)(a).

103.  Defendant is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

104.  At all times relevant herein, Jennifer Gomric-Minton, Ann Barnum, Patricia Boze and Frank Bergman were Plaintiff's supervisors and employees or agents acting on behalf of Defendant.

105.  At all times relevant herein, the Board and its members were agents or officers acting on behalf of the Defendant.

106.  Defendant acted with respect to the term's privileges and conditions of Plaintiff's employment on the basis of unlawful discrimination due to race.

107.  Defendant caused Plaintiff, a Black employee to be paid less salary and receive lower raises than its white employees.

108.    Defendant refused to promote Plaintiff despite her higher qualifications and increased workload entitling her to a promotion in rank, and instead promoted lesser qualified white employees.

109.    Defendant was aware of the unlawful discriminatory culture, policies, and practices in place at Defendant St. Clair that caused Plaintiff to be paid less and receive lower salaries than its white employees, and regularly not be promoted despite her higher qualifications and increased workload, but Defendant failed to take reasonable corrective measures in violation of the IHRA, 775 ILCS 5/2-102(A).

**Count V**
**Illinois Human Rights Act – Retaliation**

110.    Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if fully set forth therein.

111.    Plaintiff is an employee within the meaning of the IHRA, 775 ILCS 5/2-101(A)(1)(a).

112.    Defendant is an employer within the meaning of the IHRA, 775 ILCS 5/2-101(B)(1)(c).

113.    At all times relevant herein, Jennifer Gomric-Minton, Ann Barnum, Patricia Boze and Frank Bergman were Plaintiff's supervisors and employees or agents acting on behalf of Defendant.

114.    At all times relevant herein, the Board and its members were agents or officers acting on behalf of the Defendant.

115.    As described above, Defendant St. Clair took adverse employment actions against Plaintiff and retaliated against Plaintiff by subjecting her to public harassment when using the restroom while ill, not properly paying her on several occasions, interfering with Plaintiff's

19

ability to do her job by refusing to work with her, refusing to promote her to a job she was qualified for, instead promoting a less qualified white employee, and placing Plaintiff purposefully in job in which she would have to deal with the public putting her at high risk of severe illness and death due to Covid 19, eventually forcing Plaintiff to retire early, which constituted a constructive discharge.

116. Defendant retaliated against Plaintiff for:

a. her opposition to the ongoing discriminatory culture, policies, customs, and procedures in place at Defendant as practiced and implemented by Defendant's employees, agents, and Board; and/or

b. Her complaints to her supervisors on March 3, 2018, and March 5, 2019, that she was receiving a lower salary and lower raises than less qualified white employees for the same or similar work and their repeated failures to promote Plaintiff despite her higher qualifications and increased workload.

117. Defendant's actions are in violation of the IHRA, 775 ILCS 5/6-101(A).

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding lost wages and benefits, front wages, emotional distress damages, compensatory damages, pre-and-post judgment interest, and attorney's fees and costs, as well as any other relief that this Court should find necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully Submitted:

By: */s/ Sarah Jane Hunt*
Sarah Jane Hunt 63899
Nicole Matlock
Amber Kempf
Kennedy Hunt, P.C.
4500 West Pine Blvd.
St. Louis, MO 63108
(314) 872-9041
(314) 872-9043 fax
sarahjane@kennedyhuntlaw.com
nmatlock@kennedyhuntlaw.com
akempf@kennedyhuntlaw.com